1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8

9 Edvin Mita,                                    No. CV-13-01137-PHX-NVW (BSB)

10                     Petitioner,               **REPORT AND**
                                                 **RECOMMENDATION**
11 v.

12 Charles L. Ryan,

13                     Respondent.

14

15         Edvin Mita (Petitioner), through counsel, has filed a Petition for Writ of Habeas

16 Corpus pursuant to 28 U.S.C. § 2254 raising two grounds for relief.    (Doc. 1.)

17 Respondents have filed an Answer asserting that Ground One lacks merit and that

18 Ground Two is procedurally defaulted and barred from federal habeas corpus review.

19 (Doc. 7.)   Petitioner has filed a reply arguing that Ground Two is not procedurally

20 defaulted and that he should prevail on the merits of Grounds One and Two.  (Doc. 9.)

21 For the reasons below, the Petition should be denied.

22 **I.      Factual and Procedural Background**

23         **A.      Charges, Trial, and Sentencing**

24         In April 2010, the State of Arizona charged Petitioner with eight counts of sexual

25 assault, and related charges of possession of a narcotic drug and drug paraphernalia.

26 (Doc. 7, Ex. A.)  The charges stemmed from separate incidents, involving three women,

27 which were alleged to have occurred on three nights in July and November 2009.  (*Id.*)

28

In each incident, Petitioner allegedly sexually assaulted the women after spending time with them in a bar. (*Id.*)

On the government's pretrial motion, the Maricopa County Superior Court (trial court) precluded Petitioner from introducing evidence of victim K.H.'s alleged financial difficulties on the ground that the probative value of that evidence was outweighed by the danger of prejudice and the potential for confusion. (Doc. 7, Ex. F at 37-41.) The trial court, however, did not preclude Petitioner from asking K.H. about specific conversations they had regarding her finances. (*Id.*) During trial, upon consideration of an offer of proof from Petitioner and counsel's arguments, the trial court affirmed its ruling that evidence of K.H.'s finances was inadmissible under Arizona Rules of Evidence 402 and 403. (Doc. 7, Ex. J at 4-12, Ex. Q at 167-181.)

In addition, during the discussion of jury instructions, Petitioner objected to the instruction regarding the definition of consent. He proposed an instruction to clarify that a victim could consent even if impaired by drugs or alcohol. (Doc. 7, Ex. S at 12-20.) The trial court denied Petitioner's request for the additional instruction, but added language to clarify that the government had the burden of proving the "without consent" element.[1] (*Id.*)

---

[1] The trial court instructed the jury on sexual assault as follows:

> The crime of sexual assault requires the State to prove any of the following: The defendant intentionally or knowingly caused another person to have oral contact with his penis without the other person's consent; or the defendant intentionally or knowingly penetrated the vulva or anus of another person with a part of his body without the other person's consent.

> Without consent includes but is not limited to any of the following: The victim is coerced by the immediate use or threatened use of force against a person or property; or the victim is incapable of consent by reasons of drugs, alcohol, sleep or any other similar impairment of cognition, and such condition is known or should have reasonably have been known to the defendant.

(Doc. 7, Ex. T at 15-16.)

On March 24, 2011, a jury found Petitioner guilty of sexual assault of K.H. (Count Fourteen), aggravated assault of K.H. (Count Fifteen), possession of a narcotic drug (Count Seventeen), and possession of drug paraphernalia (Count Eighteen), and acquitted Petitioner on the remaining felony counts. (Doc. 7, Ex. V.) After the jury was dismissed, the trial court found Petitioner guilty of the three misdemeanor charges tried to the bench (Counts Three, Four, and Sixteen). (*Id.*)

On April 26, 2011, the trial court sentenced Petitioner to consecutive terms of imprisonment totaling eleven years on the felony convictions. (Doc. 7, Ex. W.) The trial court sentenced Petitioner to time served for the misdemeanor convictions. (*Id.*)

## B.   Direct Appeal

Petitioner, through counsel, timely appealed his convictions to the Arizona Court of Appeals. (Doc. 7, Ex. X at 5.) In his opening brief in the court of appeals, Petitioner raised four grounds for relief arguing that: (1) the trial court committed fundamental error by refusing to sever the charges; (2) the trial court erred by failing to sanction the government under "Rule 15.7" for its failure to disclose; (3) the trial court erred by refusing to allow cross examination of K.H. regarding her request to Petitioner for money; and (4) fundamental error occurred based on the trial court's failure to instruct the jury on the *mens rea* applicable to the "without consent" element of sexual assault. (*Id.* at 19.) On June 12, 2012, the court of appeals affirmed Petitioner's convictions and sentences. (Doc. 7, Ex. AA.)

On August 10, 2012, Petitioner filed a petition for review in the Arizona Supreme Court. (Doc. 7, Ex. BB.) The petition sought review on only the jury instruction claim. (*Id.*) On January 8, 2013, the Arizona Supreme Court denied review without comment. (Doc. 7, Ex. CC.) Petitioner did not initiate post-conviction relief proceedings. (Doc. 1 at 2.)

## C.   Petition for Writ of Habeas Corpus

On June 5, 2013, Petitioner filed the pending Petition claiming that the trial court erred in restricting his cross-examination of K.H. (Ground One), and that the trial court's

jury instructions on sexual assault violated his rights under the Due Process Clause (Ground Two). (Doc. 1 at 9-10.) Respondents assert that Ground One, although properly before this Court, lacks merit, and that Ground Two is procedurally defaulted and barred from habeas corpus review. (Doc. 7.) Petitioner opposes Respondents' arguments. (Doc. 9.) As discussed below, the Petition should be denied.

## II.     Ground One — Confrontation Clause

In Ground One, Petitioner argues that the trial court improperly precluded evidence and limited his cross-examination of K.H., one of the alleged victims, in violation of the Confrontation Clause of the Sixth Amendment. The parties agree that Petitioner properly exhausted his Confrontation Clause claim asserted in Ground One on direct appeal. (Docs. 1, 7, 9.) Accordingly, the Court will review that claim under the standard of review applicable to claims on § 2254 review.

### A.     Standard of Review for Claims Adjudicated in State Court

If a habeas petition includes a claim that was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __ U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011). This standard is "difficult to meet." *Richter*, 131 S. Ct. at 786. It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the

Supreme Court that existed at the time of the state court's decision. *Greene*, 132 S. Ct. at 44. A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted). A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. Although a criminal defendant has the right to confront the witnesses against him, the trial court "retain[s] wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Brown v. Ruane*, 630 F.3d 62, 72-73 (1st Cir. 2011) (concluding that state trial court's decision to limit cross-examination was "entitled to substantial deference under AEDPA" because of the "generality of the right [of cross-examination and] the substantial element of judgment required of trial courts in excluding defense evidence").

Thus, because the legal rule concerning the scope of cross-examination is a general one, the Arizona Court of Appeals' rejection of Petitioner's claim is entitled to substantial deference under the AEDPA. *See Walker v. Litscher*, 421 F.3d 549, 557 (7th Cir. 2005) ("[R]ulings on Confrontation Clause issues are very fact-specific and involve

case-by-case determinations . . . making it difficult to call a state court ruling in this area 'objectively unreasonable' [under AEDPA]").

Furthermore, even when a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  *See Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 631.

**B.      The Trial Court's Rulings Limiting Cross-Examination**

Before trial, the state filed a motion in limine to preclude Petitioner from introducing evidence that K.H. had a default judgment entered against her and had filed for bankruptcy.  (Doc. 7, Ex. B.)  Petitioner objected to the state's motion, asserting that several facts showed that K.H. had a motive to fabricate the allegations against Petitioner, including that K.H. thought Petitioner had a lot of money, K.H. researched Petitioner on the internet and learned that he had "an LLC," and K.H. was having "severe financial problems."  (Doc. 7, Ex. C at 1-2.)

During a hearing on the state's motion, the trial court asked why K.H.'s financial problems were relevant.  (Doc. 7, Ex. F at 37.)  Petitioner asserted that K.H.'s focus on Petitioner's finances and her own financial problems provided a motive for her to bring false allegations against Petitioner.  (*Id*. at 37-41.)  Petitioner acknowledged that K.H. had not filed a civil suit against him.  (*Id*. at 38.)  After further argument from the parties, the trial court precluded Petitioner from introducing evidence related to K.H.'s bankruptcy, explaining that any probative value was substantially outweighed by the danger of prejudice and the potential for confusion of the issues under Arizona Rule of Evidence 403.  (*Id*. at 40-41.)  The trial court clarified that Petitioner was not precluded "from claiming motive on any of the victims' parts for making . . . an unfounded accusation of nonconsensual sex."  (*Id.*)

Before K.H. testified at trial, Petitioner asked to be allowed to question her about whether she had conversations with Petitioner about her financial difficulties, including an October 22, 2009 default judgment against her, and a civil lawsuit for "nonpayment since October 22, 2006." (Doc. 7, Ex. J, at 4-10.)  Defense counsel argued that K.H. had mentioned her financial problems to Petitioner, but he had "refused to assist her [with] any of her financial problems and told her so on November 18th and 19th [2009 (the alleged dates of the sexual assault)], as well as other times." (*Id.* at 6.)  Counsel argued that Petitioner's refusal to help K.H. financially provided a motive for her to make false sexual-assault allegations against him. (*Id.* at 6-7, 9.)

In response, the state argued that Petitioner's theory was speculative and emphasized that K.H., who allegedly wanted money from Petitioner, had not filed any action asserting a financial claim against Petitioner. (*Id.* at 8.)  The state indicated that it had no objection to Petitioner asking K.H. if she had ever asked Petitioner for money, but argued that Petitioner should not be able to ask K.H. about the details of her personal finances. (*Id.* at 9.)  The trial court ruled that Petitioner could question K.H. about any conversations with Petitioner about her finances, but that he was precluded from introducing specific information about K.H.'s "financial difficulties outside of [the] case" because such information would be "collateral, speculative, and an undue waste of time . . . ." (*Id.* at 10-11.)  The trial court clarified that if K.H. denied having discussed her finances with Petitioner, she could not be impeached with evidence of the default judgment or about another civil suit for "nonpayment since October 26, 2009." (Doc. 7, Ex. J at 4-5, 11.)

On cross-examination, K.H. stated that she believed Petitioner was "successful," that he had had recently returned from Europe when she first met him, he "dressed very well," he owned two Mercedes Benz vehicles, he had an LLC, he "was treated like a VIP," and he might have access to a private plane. (Doc. 7, Ex. K at 149-52.)  K.H. also testified that when she first met Petitioner, he made it sound as if he "had a driver." (*Id.* at 150.)  K.H., however, denied that she had asked Petitioner for money and stated that

1   she could not recall whether she had discussed her finances with Petitioner.  (*Id.* at 152,

2   156-57.)

3   During his testimony, Petitioner stated that on November 19, 2009, the date of the

4   alleged sexual assault, K.H. had told him that she had "financial problems."  (Doc. 7,

5   Ex. Q at 167.)  When the government objected to this line of questioning, the trial court

6   excused the jury and allowed Petitioner to make an offer of proof on this subject.  (*Id.* at

7   167-68.)  Petitioner stated that K.H. told him she was over a "[h]undred plus, thousand"

8   in debt, K.H. said she was "stressed out" and "had a couple of lawsuits against

9   her,"  K.H. repeatedly asked about his "business," and, although "there was never a direct

10  question," there was "an implication" that K.H. wanted him to give her money.  (*Id.* at

11  168-71, 174.)  Petitioner also said that he had a phone conversation with K.H. about her

12  financial problems on February 7, 2010, and that he had told her he was not going to give

13  her any money.  (*Id.* at 172-74.)  Petitioner added that he believed K.H. thought he "had

14  money."  (*Id.* at 175.)

15  Petitioner wanted to argue that K.H. fabricated the allegations against him because

16  he did not give her money.  (*Id.* at 178.)  After hearing argument from counsel, the trial

17  court concluded, although bias of a victim is relevant, evidence of K.H.'s financial

18  difficulties was inadmissible.  (*Id.* at 175-80.)  The trial court noted that K.H.'s and

19  Petitioner's general conversation about money did not "equate to a conversation about

20  asking for money."  (Doc. 7, Ex. Q at 176.)  The trial court concluded that "the

21  implication, speculation that [the accusation of sexual assault] was made because of

22  [K.H.'s] financial worries was speculative on both ends, whether she [had financial

23  difficulties] at the time [of the alleged sexual assault] and whether there's not been a

24  direct [request for money]."  (Doc. 7, Ex. Q at 179-180.)  The trial court also noted that

25  Petitioner's theory was particularly speculative considering K.H.'s initial hesitancy to

26  pursue criminal charges against Petitioner.  (*Id.* at 179-80.)  Accordingly, the trial court

27  found evidence of K.H.'s finances inadmissible under Arizona Rules of Evidence 402

28  and 403.  (Doc. 7, Ex. Q at 180.)

**C.**     **The Court of Appeals' Denial of Petitioner's Claim**

Petitioner argues that the trial court's rulings limiting evidence of K.H.'s financial issues violated his rights under the Confrontation Clause of the Sixth Amendment. (Doc. 1 at 9.)   The "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal quotation marks omitted).   "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested[, allowing the cross-examiner] . . . to delve into the witness' story to test the witness' perceptions and memory . . . [and] to impeach, *i.e.*, discredit, the witness."  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

In general, a trial court violates the Confrontation Clause only when it prevents a defendant from examining a particular and relevant topic, such as bias.  *Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011) (noting that "the Supreme Court has consistently held that a Confrontation Clause violation occurs when a trial judge prohibits any inquiry into why a witness may be biased.");  *see Davis*, 415 U.S. at 316 ("[T]he cross-examiner is . . . permitted to delve into the witness' story to test the witness' perceptions and memory, [and] . . . has traditionally been allowed to impeach, *i.e.*, discredit, the witness.").   However, when the trial court permits some inquiry regarding bias, the trial court has "wide latitude to impose reasonable limits on such cross-examination.   No Confrontation Clause violation occurs as long as the jury receives sufficient information to appraise the biases and motivations of the witness."  *Id*.

The Supreme Court has emphasized that the right to cross-examination is limited to the guarantee of "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Van Arsdall*, 475 U.S. at 679 (internal quotation marks omitted).   Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among

1    other things, harassment, prejudice, confusion of the issues, the witness' safety, or

2    interrogation that is repetitive or only marginally relevant." *Id.*

3        On direct appeal in the state court proceedings, the Arizona Court of Appeals

4    determined that Petitioner had not shown that the trial court had violated his rights under

5    the Confrontation Clause by limiting his cross examination of K.H.  Here, in his pending

6    habeas petition, Petitioner has not shown that the appellate court's resolution of his

7    Confrontation Clause claim was contrary to, or an unreasonable application of,

8    controlling Supreme Court precedent.  *See Nevada v. Jackson*, ___ U.S. ___, 133 S. Ct.

9    1990, 1992-94 (2013) (concluding that state court's ruling barring rape defendant from

10   presenting extrinsic evidence of victim's prior accusations of sexual assault was not an

11   unreasonable application of Supreme Court precedent when, among other things, the

12   proffered evidence had little impeachment value); *Clark v. Arizona*, 548 U.S. 735, 770

13   (2006) ("[W]ell-established rules of evidence permit trial judges to exclude evidence if its

14   probative value is outweighed by certain other factors such as unfair prejudice, confusion

15   of the issues, or potential to mislead the jury."); *Holmes v. South Carolina*, 547 U.S. 319,

16   326-27 (2006) ("[W]e have stated that the Constitution permits judges to exclude

17   evidence that is repetitive, only marginally relevant or poses an undue risk of harassment,

18   prejudice, or confusion of the issues.").

19       In concluding that the trial court did not err in precluding evidence of K.H.'s

20   financial difficulties, the appellate court cited the controlling Supreme Court precedent

21   and explained that any "financial difficulties that [K.H.] might have had at the time of the

22   alleged sexual assault had little or no relevance" on the record before the trial court.

23   (Doc. 7, Ex. AA at 14-15 (citing *Davis*, 415 U.S. at 316-18).)  The appellate court also

24   noted that K.H. "testified she had never asked [Petitioner] for money, a claim [Petitioner]

25   did not later dispute."  (*Id.*)  Additionally, Petitioner testified that "the only time he had

26   actually told [K.H.] he was not going to give her any money was in February 2010, two

27   months after she filed the assault report with police and a month after she agreed to

28   prosecute," and Petitioner's theory that K.H. "had fabricated the allegations because he

refused to give her money was pure conjecture, not supported even by his own proffer under oath." (*Id.*)  The appellate court denied Petitioner's Confrontation Clause claim, ruling that "the [trial] court's ruling that defense counsel could ask [K.H.] about any conversations in which she asked [Petitioner] for money, but could not cross-examine her about her specific financial difficulties, was a reasonable limitation for the reasons cited by the court: the precluded inquiry involved a collateral issue, its relevance was based on speculation, and it would cause an undue waste of time." (*Id.* at 15-16.)

As Petitioner conceded during his offer of proof, his theory that K.H. wanted him to give her money was based on his own inference that the combination of her financial difficulties and her curiosity about his source of income suggested that she wanted money from him. (Doc. 7, Ex. Q at 168-69.)  After his offer of proof, Petitioner argued he had consensual sex with K.H. in the morning, and that she did not tell anyone that she had been sexually assaulted until later in the day; thus, Petitioner asserted, "something [must have] happened to upset" K.H.  (*Id.* at 176.)  According to Petitioner's own testimony, however, K.H. did not ask him for money that day.  (*Id.* at 169.)  Further, Petitioner stated that he did not tell K.H. he would not give her money until several months after K.H. had gone to the police.  (*Id.* at 174.)  Additionally, Petitioner testified before the jury that he and K.H. had parted on "good terms" after he left her apartment on the day of the alleged assault.  (*Id.* at 191.)

As the court of appeals found, the trial court's limitation of cross-examination to preclude inquiry into K.H.'s personal finances did not violate the Confrontation Clause. Petitioner asserted that such information was relevant to his theory that K.H. was motivated to fabricate sexual assault charges against him because he had refused to help her financially.  However, Petitioner's offer of proof and his own trial testimony indicated that K.H. did not directly ask Petitioner for money.  Rather Petitioner assumed that K.H. wanted money from him based on her discussions of her financial issues and her interest in his source of income.  Additionally, although Petitioner testified that he

1    told K.H. he would not give her money, he stated that conversation occurred in February

2    2010, several months after K.H. had reported the sexual assault to police.

3         The appellate court also reasonably concluded that Petitioner's theory that K.H.

4    fabricated the sexual assault charges because he had refused to give her money was

5    speculative.   Thus, the trial court did not violate the Confrontation Clause when it

6    determined that specific evidence of K.H.'s financial issues — including her bankruptcy,

7    a default judgment against her, and a suit against her to collect on an unpaid debt — was

8    inadmissible as more prejudicial than probative of any relevant issue.

9         Although the trial court limited the cross-examination of K.H., it permitted

10   Petitioner to inquire about his conversations with K.H. about her finances, including

11   whether she had asked him for money.  (Doc. 7, Ex. K at 61-159, Ex. Q at 180.)  The trial

12   court permitted some inquiry regarding K.H.'s bias, and thus it had "wide latitude to

13   impose reasonable limits on such cross-examination."  *Davis*, 415 U.S. at 316.  The state

14   court record reflects that Petitioner had "an opportunity for effective cross-examination,"

15   and the Confrontation Clause did not guarantee Petitioner the right to cross examine K.H.

16   "to whatever extent" he wished.  *See Van Arsdall*, 475 U.S. at 679.

17        Because the Arizona Court of Appeals' denial of Petitioner's Confrontation Clause

18   claim was consistent with Supreme Court precedent, it was not contrary to, or an

19   unreasonable application of, clearly established federal law.   28 U.S.C. § 2254(d)(1).

20   Furthermore, as discussed above, the state court's determination is entitled to substantial

21   deference because Ground One involves the application of a general legal rule.  *See*

22   *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (noting that when a habeas claim

23   involves "a general standard, a state court has even more latitude to reasonably

24   determine" whether that standard has been violated).

25   **III.   Ground Two — Jury Instructions**

26        In Ground Two, Petitioner argues that the trial court's jury instructions on sexual

27   assault violated the "due process clause of the Fifth, Sixth, and Fourteenth Amendments."

28   (Doc. 1 at 11.)   Respondents argue that, although Petitioner challenged the jury

instructions in the Arizona Court of Appeals, he challenged the instructions on state law grounds and did not fairly present to the state court the federal claims asserted in his pending habeas petition.  (Doc. 7 at 21-22.)  As set forth below, the Court finds that Petitioner did not fairly present his federal claims to the state court and, therefore, these claims are now procedurally barred.

### A.    Limits on Federal Court Review

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

"A claim has been "fairly presented" if the petitioner has described both the operative facts and the federal legal theory on which his claim is based.  *Baldwin*, 541 U.S. at 33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also

require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731 32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a

1    procedurally barred claim has been exhausted, as a matter of comity, the federal court

2    will decline to consider the merits of that claim.  *See id*. at 729-32.

3         However, because the doctrine of procedural default is based on comity, not

4    jurisdiction, federal courts retain the power to consider the merits of procedurally

5    defaulted claims.  *See Reed v. Ross*, 468 U.S. 1, 9 (1984).  Generally, a federal court will

6    not review the merits of a procedurally defaulted claim unless a petitioner demonstrates

7    "cause" for the failure to properly exhaust the claim in state court and "prejudice" from

8    the alleged constitutional violation, or shows that a "fundamental miscarriage of justice"

9    would result if the claim were not heard on the merits.  *Coleman*, 501 U.S. at 750.

10   Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless

11   claims regardless of whether the claim was properly exhausted in state court.  *See Rhines*

12   *v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court

13   to allow claims to be raised in state court if they are subject to dismissal under

14   § 2254(b)(2) as "plainly meritless").

15       **B.**    **Petitioner did not Fairly Present Ground Two to the State Courts**

16        In Ground Two, Petitioner argues that the jury instructions on sexual assault

17   relieved the government of its burden of proving Petitioner's mental state regarding the

18   alleged victim's lack of consent and violated the "due process clause of the Fifth, Sixth,

19   and Fourteenth Amendments."  (Doc. 1 at 11)  On direct appeal, Petitioner argued that

20   the trial court committed "fundamental error" by failing to instruct the jury "on the *mens*

21   *rea* applicable to the 'without consent' element of the charged offense of sexual assault."

22   (Doc. 7, Ex. X at 19.)  The appellate court denied relief on this claim finding that the jury

23   instruction "correctly instructed the jury as to the State's burden of proof and allowed

24   [Petitioner] to argue that he believed the victims consented."  (*Id.* at 21.)

25        Petitioner did not present his jury instruction claim as a federal claim to the

26   Arizona Court of Appeals.  (Doc. 7, Ex. X at 30-33.)  Rather, he raised it as a state law

27   claim and the appellate court resolved it solely on the basis of state law.  (Doc. 7, Ex. X,

28   at 30-33, Ex. AA at 16-22.)   Specifically, Petitioner argued that the trial court's jury

instruction on sexual assault constituted fundamental error under the Arizona Court of Appeals' decision in *State v. Kemper*, 271 P.3d 484 (Ariz. Ct. App. 2011).[2] (Doc. 7, Ex. X at 30-33.) Petitioner did not cite any federal case law in support of his claim and did not mention the Due Process Clause. (*Id.*); *see Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005) (stating that the court "consider[s] [petitioner's] briefing to the Arizona Court of Appeals to determine whether he fairly presented his federal due process claim to the Arizona courts."). Petitioner now argues that because his brief in the Arizona Court of Appeals cited *Kemper*, which in turn cited *United States v. Gaudin*, 515 U.S. 506, 51 (1995), and included a parenthetical referring to the Fifth and Sixth Amendments, he fairly presented his federal due process claim in the state court.[3] (Doc. 9 at 16.)

Although the Arizona Court of Appeals' decision in *Kemper* cited a United States Supreme Court case, Petitioner did not identify his claim as a federal due process claim, he did not cite the Due Process Clause, and he did not make any arguments clearly indicating that he was raising a federal due process claim. Petitioner's single reference to a United States Supreme Court case, which was contained in a block quote from the Arizona Court of Appeals' decision in *Kemper,* was not sufficient to fairly present a federal due process claim.

"[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial" do not constitute a "fair presentation" of a federal claim. *Castillo*, 399 F.3d at 999 (9th Cir. 2004) (internal quotation marks omitted). Similarly, a federal claim is not fairly presented to the state court by "rais[ing] a state claim that is analogous or closely similar to a federal claim," without developing "any

---

[2] Petitioner framed the issue as "[w]hether fundamental error occurred in the failure to instruct on the *mens rea* applicable to the 'without consent' element of the charged offense of sexual assault." (Doc. 7, Ex. X at 19.)

[3] Petitioner's block quote from *Kemper* includes the following citation, "*See United States v. Gaudin*, 515 U.S. 506, 510 (1995) (holding that the Fifth and Sixth Amendment 'require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime which he is charged beyond a reasonable doubt')." (Doc. 7, Ex. X at 31 (quoting *Kemper*, 271 P.3d 484).)

articulated federal legal theory." *Id.* at 999, 1002.  *See also Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").  To properly exhaust, the petitioner "must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." *Castillo*, 399 F.3d at 999.

Here, Petitioner did not directly cite *Gaudin*, but rather cited *Kemper,* an Arizona Court of Appeals' decision.  Even if *Gaudin* "squarely addresses the precise federal due process issue raised in Ground [Two of the Petition], a single and indirect reference to that case, tucked away in a petition otherwise bereft of any indicia a federal constitutional issue, cannot be deemed a fair presentation of Petitioner's federal due process claim to the Arizona Court of Appeals."  *Smith v. Schriro*, 2007 WL 779695, at *7 (D. Ariz. Mar. 13, 2007) (finding that the petitioner did not properly exhaust federal due process claim when he failed to discuss the due process clause in his state filings).  "Because exhaustion under habeas requires a far more focused presentation of federal constitutional claims," Petitioner did not fairly present the federal due process claim asserted in Ground Two to the Arizona Court of Appeals and federal habeas corpus review of that claim is procedurally barred.  *See id.*

Additionally, although Petitioner asserted on direct appeal that his claim of instructional error should be reviewed for "fundamental error," that argument does not constitute "fair presentation" of a federal issue.[4]  *See Moormann v. Schriro*, 426 F.3d

---

[4]   In his petition for review to the appellate court, Petitioner specifically argued that "[i]t is fundamental error to fail to instruct on the *mens rea* of defendant concerning the 'without consent' element of the crime of sexual assault."  (Doc. 7, Ex. X at 30.)  He now argues that because he objected to the jury instruction during the settling of jury instructions, the appellate court erred in concluding that Petitioner had not objected to the jury instruction at trial and that the appellate court's resolution of that claim is not entitled to deference under 28 U.S.C. § 2254.  (Doc. 9 at 15-16.)  The Court does not need to resolve this issue.  Whether the appellate court should have reviewed the jury instruction claim under a standard other than fundamental error review does not change the conclusion that Petitioner's assertion of fundamental error review was not sufficient to fairly present a federal due process claim.

1044, 1057 (9th Cir. 2005) (stating that Arizona's process of fundamental error review does not excuse a petitioner's failure to present a federal claim); *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (same); *see also Castillo*, 399 F.3d at 1003 (stating that "[the petitioner's] mere assertion of fundamental error does not mean he asserted a federal constitutional claim [because] claims subject to fundamental error review may consist entirely of assertions under Arizona law.").

Consequently, Petitioner did not fairly present his challenge to the sexual assault jury instruction asserted in Ground Two as a federal claim in state court. *See Anderson v. Harless*, 459 U.S. 4, 7 (1982) (concluding that a petitioner had not presented a jury instruction claim as a federal claim in state court when he had only argued that the claim was "erroneous" and cited state law to support his claim). Because Petitioner did not present his federal claim due process claim contained in Ground Two to the Arizona Court of Appeals, he did not properly exhaust that claim. *See Castillo*, 399 F.3d at 998 n.3. As discussed below, it would be futile for Petitioner to return to state court to exhaust that claim because Arizona's procedural rules would bar presentation of that claim. Accordingly, Ground Two is technically exhausted and procedurally defaulted. *See Coleman*, 501 U.S. at 732, 735 n.1.

### C.   Habeas Corpus Review of Ground Two is Procedurally Barred

Petitioner did not exhaust available state remedies with respect to his federal due process claim raised in Ground Two and a return to state court to present that claim would be futile because, under the Arizona Rules of Criminal Procedure, the deadlines for Petitioner to seek post-conviction relief or to file a direct appeal have expired. First, Rule 32.4(a) requires a defendant to file a notice of post-conviction relief "within ninety days of the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later." Here, the court of appeals issued its final order on July 12, 2012 and issued the mandate in the direct appeal on

1   February 7, 2013.[5]   (Doc. 7, Ex. AA.)   Thus, the deadline for filing a notice of post-

2   conviction relief expired in 2013.   Accordingly, Rule 32.4(a) would bar Petitioner from

3   returning to state court to assert his federal due process claim in a post-conviction

4   proceeding.   Second, under Rule 31.3, the time for filing a direct appeal expires twenty

5   days after entry of the judgment and sentence, and the Arizona rules do not provide for

6   successive direct appeals.   *See* Ariz. R. Crim. P. 31.   Accordingly, direct appeal is no

7   longer available for review of Petitioner's unexhausted claims.

8          The application of these rules does not depend on an interpretation of federal law;

9   these rules are regularly and consistently followed and, therefore, would bar any future

10  attempt to exhaust Petitioner's claims asserted in Ground Two in state court.   *See*

11  *Stewart*, 536 U.S. at 861 (holding that Arizona Rules of Criminal Procedure concerning

12  preclusion are an adequate and independent procedural bar preventing federal habeas

13  relief); *Poland v. Stewart*, 169 F.3d 573, 577-78 (9th Cir. 1999) (Arizona's procedural

14  rules are "consistently and regularly followed and are adequate to bar federal review.");

15  *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (concluding that

16  Ariz. R. Crim. P. 32.2 was an adequate and independent procedural bar).

17         Because Petitioner cannot return to state court to exhaust the federal claim asserted

18  in Ground Two, that claim is technically exhausted and barred from federal habeas

19  corpus review.   *See Teague*, 489 U.S. at 297-99 (claim was procedurally defaulted where

20  it was "clear that collateral relief would be unavailable to [the] petitioner" if he returned

21  to the state courts); *McKinney v. Ryan*, 730 F.3d 903, 914 (9th Cir. 2013) (Arizona

22  prisoner's unexhausted claim was procedurally barred because he would be barred from

23  raising it in state court pursuant to Rules 32.2(a) and 32.4); *Beaty*, 303 F.3d at 987 ("If

24  [petitioner] has any unexhausted claims, he has procedurally defaulted them, because he

25  is now time-barred under Arizona law from going back to state court.").   Because Ground

---

27         [5]   The Court obtained the date the mandate issued directly from the Arizona Court
28  of Appeals.   Facts contained in public records are considered appropriate subjects of
    judicial notice.   *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d
    1022, 1025 (9th Cir. 2006).

Two is procedurally defaulted, it is not subject to federal habeas corpus review unless Petitioner establishes a "fundamental miscarriage of justice" or "cause and prejudice" to overcome the procedural bar.  *See Coleman*, 501 U.S. at 749-50; *Teague*, 489 U.S. at 297-98.  Petitioner does not discuss, and has not established, either basis to excuse the procedural default of Ground Two and to allow federal habeas corpus review of that claim.  (Docs. 1, 9.)

**IV.   Conclusion**

As set forth above, the Petition should be denied because Ground One lacks merit and federal habeas corpus review of Ground Two is procedurally barred.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable or because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a

party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 17th day of June, 2014.

Bridget S. Bade
United States Magistrate Judge